**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| GARY D. GOLDEN, § § Plaintiff. § § V. § CIVIL ACTION NO. 3:22-cv-00397 § COMMISSIONER OF SOCIAL § SECURITY, § § Defendant. § | |

## <u>OPINION AND ORDER</u>

Plaintiff Gary D. Golden ("Golden") seeks judicial review of an administrative decision denying his applications for disability insurance benefits under Title II of the Social Security Act (the "Act") and supplemental security income under Title XVI. *See* Dkt. 1. Before me are competing motions for summary judgment filed by Golden and Defendant Martin O'Malley, the Commissioner of the Social Security Administration (the "Commissioner").[1] *See* Dkts. 17, 21. After reviewing the briefing, the record, and the applicable law, Golden's motion for summary judgment (Dkt. 17) is **DENIED**, and the Commissioner's motion for summary judgment (Dkt. 21) is **GRANTED**.

### BACKGROUND

On July 20, 2020, Golden filed applications for Title II disability and disability insurance benefits, and Title XVI supplemental security income, alleging disability beginning December 1, 2016. His applications were denied and denied again upon reconsideration. Subsequently, an Administrative Law Judge ("ALJ") held a hearing and found that Golden was not disabled. Golden filed an appeal with

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. O'Malley is "automatically substituted" as the defendant in this suit. FED. R. CIV. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

the Appeals Council. The Appeals Council denied review on September 20, 2022, making the ALJ's decision final and ripe for judicial review. Golden timely filed this appeal on November 15, 2022.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to (1) whether the Commissioner applied the proper legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence. *See Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (cleaned up). The ALJ uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past

relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id.* Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

The ALJ found at Step 1 that Golden "has not engaged in substantial gainful activity since December 1, 2016, the alleged onset date." Dkt. 13-3 at 23.

The ALJ found at Step 2 that Golden suffered from "the following severe impairments: major depressive disorder and generalized anxiety disorder." *Id.*

At Step 3, the ALJ found that Golden "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." *Id.* at 24.

Prior to consideration of Step 4, the ALJ determined Golden's RFC as follows:

> [Golden] has the residual functional capacity to perform a full range of work at all exertional levels but with nonexertional limitations. Specifically, [Golden] can understand, remember and carry out simple routine and repetitive tasks involving only simple work related decisions. In addition, [Golden] can have occasional interaction with the public and coworkers. He can work with no fixed rate or fast paced production work.

*Id.* at 25.

At Step 4, the ALJ found that "[Golden] is unable to perform any past relevant work." *Id.* at 30.

At Step 5, relying on the Medical-Vocational Guidelines, the ALJ found that Golden is not disabled because "there are jobs that exist in significant numbers in the national economy that [Golden] can perform." *Id.*

## DISCUSSION

This social security appeal raises only one issue: whether the ALJ's mental RFC determination is supported by substantial evidence. I answer that question in the affirmative.

"In this case, the ALJ determined [that Golden] retain[s] the RFC to perform a full range of work at all exertional levels." Dkt. 18 at 10. Golden does not dispute this finding. Rather, Golden contends that "the ALJ's mental RFC determination is unsupported by substantial evidence as she failed to rely on any medical opinion evidence and instead crafted the RFC out of whole cloth." *Id.* It is true that there were no medical opinions regarding Golden's RFC in the record, though that was a situation entirely of Golden's making. The state agency psychological consultants at both the initial and reconsideration levels found that there was insufficient evidence—due to Golden's refusal to provide the necessary information—to make a determination as to Golden's RFC. *See* Dkt. 13-4 at 11 ("Despite numerous efforts to obtain forms and establish contact, NO forms were returned, NO [Post Office] returned, NO contact was possible [with representative or claimant]. There is [insufficient evidence] to make a determination."); *id.* at 32 ("AT RECON[SIDERATION] CLMT HAS NOT RETURNED HIS FORMS. CLAIM WILL BE DET[ERMINED] FTC.").[2]

---

[2] "FTC" stands for failure to cooperate.

> [Social Security Administration] considers FTC a medical determination. FTC refers to an individual's failure, without good cause, to do by a certain date what SSA or the DDS has asked. That is, the individual . . . "[d]oes not provide medical or other evidence, or . . . [f]ails to attend a scheduled consultative examination (CE).

Social Security Administration, DI 28075.005, *Failure to Cooperate (FTC) and Whereabouts Unknown (WU) During a Medical Continuing Disability Review (CDR)*,

4

Golden argues that remand is required because "[n]o medical professional provided functional limitations." Dkt. 18 at 12. But "[t]he ALJ is responsible for determining an applicant's residual functional capacity," not a medical professional. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). As the Fifth Circuit has explained:

> Usually, the ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing. *The absence of such a statement, however, does not, in itself, make the record incomplete.* In a situation such as the present one, where no medical statement has been provided, our inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record.

*Id.* (emphasis added). Here, I have no trouble finding that the ALJ's decision is supported by substantial evidence. Recall that "[a] finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Ramirez*, 606 F. App'x at 777 (quotation omitted). The phrase "no contrary medical evidence" means that "[n]o medical evidence contradicts [the claimant's disability]." *Payne v. Weinberger*, 480 F.2d 1006, 1008 (5th Cir. 1973). That is not the case here.

Here, the ALJ thoroughly reviewed Golden's medical records. The ALJ acknowledged Golden's suicide attempts, "problems with memory," "thoughts of self-harm," "poor attention span and . . . distractibility," "poor insight and judgment," "auditory and visual hallucinations with voices telling him to perform bad acts," and "anxiety and anger." Dkt. 13-3 at 26–28. Indeed, there is not a single symptom mentioned in Golden's briefing that the ALJ did not already consider. The ALJ simply found more compelling the fact that when Golden received treatment and took his medications, he would report doing well. *See id.*

---

available at https://secure.ssa.gov/poms.nsf/lnx/0428075005 (last visited Dec. 22, 2023)*; see also* 20 C.F.R. § 404.1516 ("If you do not give us the medical and other evidence that we need and request, we will have to make a decision based on information available in your case. We will not excuse you from giving us evidence because you have religious or personal reasons against medical examinations, tests, or treatment.").

Yet, Golden points to a medical record indicating that even though he "was compliant with his medication, these hallucinations persisted." Dkt. 18 at 12. Golden claims "[t]his probative evidence demonstrates [that his] mental impairments would affect his ability to perform . . . in a work environment." *Id*. But Golden overlooks that "[w]hen asked how he was still taking his medication as prescribed [given that he had not picked up his medication in months], he was unable to provide an explanation." Dkt. 13-3 at 28. The ALJ considered all of the evidence, including the evidence that Golden raises on review. The ALJ simply weighed the evidence differently than Golden would like. "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). The ALJ's choices here are credible, and ample evidence supports her RFC determination.

Despite the ALJ's thorough analysis, Golden contends that the Commissioner has admitted that "the ALJ interpreted the raw medical data herself," and this was error. Dkt. 22 at 3. In making this argument, Golden leans heavily on the following quote: "[A]n ALJ may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions. Thus, an ALJ may not rely on her own *unsupported* opinion as to the limitations presented by the applicant's medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (emphasis added). But, for the reasons discussed above, the ALJ's opinion here is *not* unsupported. "An ALJ may properly make a disability determination that is not an adoption of any medical opinion while still basing h[er] decision on substantial evidence." *Rohden v. Kijakazi*, No. H-22-1951, 2023 WL 4188344, at *5 (S.D. Tex. June 2, 2023). Golden's "argument that the ALJ impermissibly relied on h[er] own lay opinion 'is actually the ALJ properly interpreting the medical evidence to determine [Plaintiff's] capacity for work.' There is no error." *Id*. (quoting *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)).

For all these reasons, I affirm the Commissioner's decision.

## CONCLUSION

For the reasons discussed above, Golden's motion for summary judgment (Dkt. 17) is **DENIED**, and the Commissioner's motion for summary judgment (Dkt. 21) is **GRANTED**.

SIGNED this 2nd day of January 2024.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE